1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                        NORTHERN DISTRICT OF CALIFORNIA

8                                 SAN JOSE DIVISION

9

10   MARY LOU GONZALES,                        Case No.  13-cv-00695-BLF

           Plaintiff,

11

     v.                                        **ORDER RE MOTIONS IN LIMINE**

12

     CITY OF SAN JOSE, et al.,                  [Re: ECF 185-194]

13

           Defendants.

14

15

16        Before the Court are the parties' ten motions in limine. *See* ECF 185-194. The Court held a

17   pretrial conference on November 12, 2015. For the reasons explained below and on the record at

18   the pretrial conference, the motions are decided as follows:

19        Plaintiff's Motion *in Limine* No. 1: DENIED.

20        Plaintiff's Motion *in Limine* No. 2: DEFERRED.

21        Plaintiff's Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

22        Plaintiff's Motion *in Limine* No. 4: GRANTED.

23        Plaintiff's Motion *in Limine* No. 5: GRANTED.

24        Defendant's Motion *in Limine* No. 1: GRANTED.

25        Defendant's Motion *in Limine* No. 2: GRANTED.

26        Defendant's Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

27        Defendant's Motion *in Limine* No. 4: GRANTED IN PART and DENIED IN PART.

28        Defendant's Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART.

United States District Court
Northern District of California

United States District Court
Northern District of California

**PLAINTIFF'S MOTIONS IN LIMINE**

**1.  Motion to Prohibit any Mention, Reference, or Testimony Involving the Homicide/Murder Investigation**

Plaintiff moves to exclude any and all evidence, references to evidence, testimony or argument "relating to the murder investigation which began before the incident which is [the] subject of Plaintiff's complaint." ECF 190 at 2. In particular, Plaintiff is concerned about evidence concerning details of the homicide, including murder weapons; the investigation of the murder; and the alleged gang affiliation and name of Plaintiff's son. *Id.* Recognizing the relevance of these facts to Defendants' case, however, Plaintiff is willing to stipulate that Defendants "were investigating a serious crime and that Plaintiff's son was a suspect in that crime." *Id.* at 4. At the pretrial conference, Plaintiff also represented a willingness to stipulate to the phrase "serious violent crime."

Plaintiff brings this motion pursuant to Federal Rules of Evidence 402 and 403. *Id.* at 3. Rule 402 provides that "irrelevant evidence is not admissible." Under Rule 403, the court may also exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  A district court has "wide discretion" in making Rule 403 decisions but must exclude evidence of slight probative value if there is a modest likelihood that the evidence would cause unfair prejudice or mislead the jury. *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

Defendants respond that a description of the crime is necessary to establish two parts of their case: first, their defense that Defendants acted reasonably under the circumstances and, second, alternative causes for Plaintiff's emotional distress. ECF 199 at 1-2.  Defendants offer to forego all evidence regarding the details of the homicide if the Court informs the jury of the following: "The Plaintiff's son, Robert Cordova, Jr., was one of three perpetrators of a gang-related homicide that occurred in San Jose on February 5, 2012. At the time the events at issue in this case occurred, a warrant had been issued for Mr. Cordova's arrest but he was not yet in custody." *Id.* at 3.

The Court finds evidence of the murder investigation, including describing the crime as a gang-related murder, relevant to and probative of Defendants' defense that they acted reasonably under the circumstances known to them at the time of the incident—which Defendants represent included a belief that the crime was a gang-related murder. Because police procedures differ between crimes that are gang-related and those that are not, the gang-related nature of the crime is relevant to and probative of whether Defendants acted reasonably during the incident; the same logic applies to the fact that the crime was a murder. Accordingly, Defendants have a right to have the circumstances accurately described.

The Court finds that evidence of the murder investigation is also relevant to and probative of the issue of emotional distress and related damages. Defendants contend that, to the extent that Plaintiff suffered any emotional distress, it was due primarily not to the incident at issue but, rather, to her son's position at the time. Describing the investigation as one related to "a serious violent crime" is not sufficient to allow Defendants to thus challenge the measure of damages. A case where a mother knows her son is facing charges for "a serious violent crime," such as a violent robbery or home invasion, would be very different from the case here, where a mother knew her son was facing murder charges and could have worried that he would face the death penalty.

The Court also recognizes the prejudicial effect of the precise identification of the crime, and its gang-related nature in particular. However, the Court finds that the prejudicial effect can be reduced by a statement to the jury that makes clear that Plaintiff herself was in no way associated with the homicide. The Court invites the parties to draft and stipulate to such a statement.

On balance, given how significant the Court finds the probative value of this evidence to be for both Defendants' defense and the measure of damages, the Court will allow the crime to be described as a gang-related murder assuming Defendants are able to establish that this description accurately reflects Defendants' understanding of the circumstances at the time of the incident. The Court will disallow any description of the manner in which the murder was carried out.

Accordingly, the Court DENIES Plaintiff's Motion *in Limine* No. 1.

**2.  Motion to Preclude Certain Witnesses from Testifying at Trial Based on Lack of**

United States District Court
Northern District of California

**Personal Knowledge on the Subject Incident**

Plaintiff moves to exclude testimony by Officers Jiminez and Sanchez pursuant to Rule 602 based on lack of knowledge of the underlying facts of this case.[1] ECF 191. Defendants oppose the motion. ECF 200.

The Court DEFERS ruling on the admissibility of this testimony until any objections are made to individual questions or testimony at trial.

**3. Motion to Limit Certain Portions of Defendants' Expert Report and Testimony**

Plaintiff moves to exclude testimony regarding opinions 1 through 7 of Defendants' expert Greg Meyer. ECF 192. Plaintiff opposes opinion 7 because it concerns a claim that is no longer in the case. Defendants agree that opinion 7 will not be offered. Accordingly, the Court GRANTS Plaintiff's unopposed motion to exclude opinion 7.

Plaintiff objects to the remaining opinions, in part, for opining on ultimate issues of fact or law. In particular, Plaintiff challenges Mr. Meyer's use of the word "reasonable" to describe Defendants' conduct. Defendants oppose exclusion of Mr. Meyer's opinions 1 through 6. ECF 201.

Pursuant to Rule 704, asking a witness to give an opinion on or using the technical words of the law, such as "reasonable," would be objectionable, while opinions regarding common language, such as "appropriate" or "best practices," generally do not invade the province of the jury. *See* Notes of Advisory Comm. on Fed. R. Evid. 704.

In reviewing Mr. Meyer's opinions, the Court agrees with Plaintiff that, as articulated, certain opinions invade the province of the jury. That being said, the subject matter of opinions 1 through 6 and the bases for them are appropriate and will be allowed as long as counsel seeks those opinions through hypothetical or general questions that do not seek opinions regarding ultimate facts or legal conclusions.

---

[1] Plaintiff's Motion *in Limine* No. 2 additionally purports to "seek[] an order excluding any and all evidence, references to evidence, testimony or argument relating to plaintiff's tattoos or other physical markings." Pl.'s Mot. 2 at 2. At the pretrial conference, Plaintiff's counsel represented that tattoos and physical markings are not the subject of this motion *in limine*. Accordingly, the Court does not rule on that subject in the context of this motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      Accordingly, the Court GRANTS Plaintiff's motion to exclude testimony regarding Mr.

2  Meyer's opinions 1 through 6 as formulated in the report and allows the subject matter to be

3  presented through proper questioning that does not elicit testimony regarding the ultimate facts

4  and law in the case. Thus, the motion is DENIED IN PART as to the subject matter of the

5  opinions offered. The manner in which questions are asked and answered will be determinative of

6  admissibility at trial.

7  **4. Motion to Prohibit Evidence Regarding Robert Cordova, Sr. and Marylou Gonzales'**

8      **Prior Criminal Arrests**

9      Plaintiff moves to exclude any and all evidence, references to evidence, testimony or

10  argument relating to Plaintiff's or Robert Cordova, Sr.'s prior arrests or convictions.[2] ECF 193.

11  Defendants do not oppose this motion. ECF 202.

12      Accordingly, the Court GRANTS Plaintiff's Motion *in Limine* No. 4.

13  **5. Motion to Prohibit Evidence Regarding Robert Cordova, Sr.'s Tattoos**

14      Plaintiff moves to exclude any and all evidence, references to evidence, testimony or

15  argument relating to Robert Cordova, Sr.'s[3] tattoos and physical markings, including those

16  removed before the date of the incident which gave rise to this case. ECF 194. Defendants do not

17  oppose this motion. ECF 203.

18      Accordingly, the Court GRANTS Plaintiff's Motion *in Limine* No. 5.

19

20               **DEFENDANTS' MOTIONS IN LIMINE**

21  **1. Motion to Exclude Reference to Any Internal Affairs Investigations**

22      Defendants move to exclude any evidence regarding any Internal Affairs investigation

23  regarding the conduct of a San Jose police officer. ECF 185. Plaintiff does not oppose this motion.

24

25  [2] Plaintiff's Motion *in Limine* No. 4 similarly purports to "seek[] an order excluding any and all evidence, references to evidence, testimony or argument relating to plaintiff's tattoos or other

26  physical markings." ECF 191 at 2. Again, tattoos and physical markings are not the subject of this motion *in limine* and the Court does not rule on that subject here.

27  [3] Plaintiff's Motion *in Limine* No. 5 also requests exclusion of any evidence regarding Plaintiff's tattoos and other physical markings. At the pretrial conference, Plaintiff's counsel clarified that the request pertains to Robert Cordova, Sr.'s tattoos and physical markings only. Accordingly, this

28  ruling does not extend to evidence regarding Plaintiff's tattoos and other physical markings.

1    Accordingly, the Court GRANTS Defendants' Motion *in Limine* No. 1.

2    **2.  Motion to Exclude Witnesses**

3    Defendants request that the Court exclude all witnesses, including experts, with the

4    exception of the parties, during the trial pursuant to Rule 615. ECF 186. Plaintiff does not oppose

5    this motion.

6    Accordingly, the Court GRANTS Defendants' Motion *in Limine* No. 2.

7    **3.  Motion to Exclude Evidence Regarding and/or Bifurcate Plaintiff's Negligence Claim**

8    Defendants move to exclude all argument and evidence regarding their duty to investigate

9    the validity of the arrest warrant. ECF 187. In the alternative, Defendants request that the Court

10   bifurcate the negligence cause of action, to be tried after the jury has decided the Fourth

11   Amendment claims. *Id.* at 4. Plaintiff opposes this motion. ECF 210.

12   Under California law, a peace officer "who makes an arrest pursuant to a warrant of arrest

13   regular upon its face" shall not be liable if, in making the arrest, the officer "acts without malice

14   and in the reasonable belief that the person arrested was the one referred to in the warrant." Cal.

15   Civ. Code § 43.55(a). Plaintiff has failed to identify any authority to support her view that

16   Defendant had any duty to investigate the validity of the arrest warrant.

17   Accordingly, the Court DENIES the motion to bifurcate the trial and GRANTS the motion

18   to exclude evidence of Defendants' duty to investigate the validity of the warrant. This includes

19   evidence that the individual named on the warrant was already in custody, evidence challenging

20   the probable cause affidavit, and evidence that the warrant should have been recalled. The Court

21   will allow evidence regarding whether or not Defendants had a reasonable belief Plaintiff was the

22   person referred to in the warrant and evidence of malice for purposes of the negligence claim.

23   **4.  Motion to Exclude Certain Testimony by the Plaintiff's Expert**

24   Defendants move to preclude Plaintiff's expert Timothy Williams, Jr. from testifying to

25   certain information revealed in his report and deposition testimony. ECF 188. In part, Defendants

26   move to exclude opinions regarding Defendants' duty to investigate the validity of the warrant. In

27   light of the Court's ruling on Defendant's Motion *in Limine* No. 3, the Court GRANTS

28   Defendants' motion with regard to any opinions concerning Defendants' duty to investigate the

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    validity of the warrant, including opinion 4.

2         With regard to Mr. Williams' remaining opinions, Defendants argue that the anticipated

3    testimony consists of improper legal or factual conclusions and/or is irrelevant. *Id.* Defendants

4    request leave to fully brief this motion and ask the Court to set a separate hearing for it. *Id.*

5    Plaintiff opposes the motion. ECF 211. The Court finds that an additional hearing is not necessary.

6    Accordingly, the request for an additional hearing is DENIED.

7         Upon review of the opinions, the Court agrees with Defendants that Mr. Williams' report

8    and deposition cross the line into offering opinions on ultimate facts and legal conclusions and far

9    exceed the scope of proper expert testimony.[4] That being said, the Court also finds that the subject

10   matter of Mr. Williams' opinions, with the exception of Defendants' duty to investigate the

11   validity of the warrant discussed above, is generally appropriate for testimony.

12        Accordingly, the Court GRANTS the remainder of Defendants' motion to exclude

13   testimony of Plaintiff's expert, with allowance to question Mr. Williams in a manner that does not

14   elicit testimony regarding the ultimate issues of fact and law and that is consistent with the Court's

15   ruling on Plaintiff's Motion *in Limine* No. 3.[5]

16   **5. Motion to Exclude Evidence of Emotional Distress**

17        Defendants move to exclude any argument and evidence that the Plaintiff sustained,

18   suffered, or is entitled to damages for emotional distress as a result of the incident at issue. ECF

19   189 at 2. Defendants argue that Plaintiff's invocation of the Fifth Amendment during her

20   deposition precluded them from discovering other causes of emotional distress. *Id.* at 3. Plaintiff

21   opposes the motion to exclude and raises, but also opposes, the possible alternative remedy of an

22   adverse inference instruction. ECF 212.

23   _____

24   [4] For example, Mr. Williams offers the following opinions that would invade the province of the
     jury: "SJPD Officer Dela Cruz . . . violated SJPD policy . . ." (Opinion No. 2); "SJPD Sergeant

25   Matthew Archer exercised no supervision in this matter." (Opinion No. 5); "Based upon my
     review and analysis of the discovery in the matter, there is nothing that led me to believe that the

26   Mary Gonzales that was named and described on the felony warrant would be located at the
     Plaintiff's residence." (Opinion No. 6).

27   [5] At the pretrial conference, the Court went through each of Mr. Williams' opinions in detail,
     highlighting the statements of ultimate fact and legal conclusions that will not be allowed at trial.

28   The parties should consult the transcript of that proceeding if they require additional details of the
     limitations.

United States District Court
Northern District of California

1    At the pretrial conference, the Court authorized supplemental briefing on this issue and

2  provided a draft adverse inference instruction as a starting point for the parties. On November 19,

3  2015, Defendants submitted a supplemental brief in support of their motion to exclude or, in the

4  alternative, to provide the Court's proposed adverse inference instruction.[6] ECF 217. On

5  November 23, 2015, Plaintiff submitted a response, opposing any penalty but arguing that, if a

6  penalty is imposed, it should be restricted to the particular questions for which Plaintiff asserted

7  her Fifth Amendment privilege. ECF 218.

8    During her deposition, Plaintiff asserted the Fifth Amendment in response to the following

9  questions:

10
- "Did you have any conversation with Shawna Ben between February 5, 2012 and March 13, 2012?"

11
- "Did you have any conversations with Mr. Jimmy Ibarra from February 5, 2012 to March 13, 2012?"

12
- "Have you had any conversation with any of the four other suspects [in the homicide] . . . between February 5, 2012 to March 13, 2012?"

13

14
- "Have you had any conversations at all with the parents of any of those four suspects . . . with regards to anything between the dates of February 5, 2012 to March 13, 2012?"

15
- "With respect to all the people I just mentioned, do you also invoke your Fifth Amendment right for any conversations you've had with them from March 13, 2012 to present [October 14, 2014]?"

16

17  Hom Decl. in Support of Motion to Compel Exh. A, ECF 103-1 at 53-55.

18    Following Plaintiff's assertion of the Fifth Amendment, Defendants moved to compel her

19  to answer the questions. ECF 101. The Honorable Magistrate Judge Paul S. Grewal denied the

20  motion, finding that Plaintiff had properly invoked her Fifth Amendment right because her belief

21  "that she would put herself at risk of prosecution" was "more than reasonable." Order Denying

22  Mot. to Compel, ECF 137 at 5. Judge Grewal also found that the questions were relevant to

23  Plaintiff's emotional distress claims and that Plaintiff's "refusal to answer denied Defendants that

24  information for use in their defense." Feb. 18, 2015 Clarification, ECF 139.

25    Defendants assert that the Court has the authority under these circumstances to preclude

26

27  [6] The draft adverse inference instruction stated, in relevant part, "[Y]ou may, but are not required to, draw an inference that Ms. Gonzales' truthful answers in her deposition testimony in fact

28  would have shown that some, if not all, of the emotional distress she experienced was caused by circumstances involving her son, Robert Cordova, Jr."

United States District Court
Northern District of California

1   Plaintiff from offering any evidence regarding emotional distress because Plaintiff "refuse[d] to

2   provide relevant evidence regarding alternative causes for her claimed emotional distress." Supp.

3   Brief at 2. Plaintiff responds that Defendants "do not cite one question asking about alternative

4   causes for her emotional distress that were not answered." Response at 4. Rather, Plaintiff argues,

5   the "only information that was not supplied was whether she talked to certain persons." *Id.* As a

6   result, Plaintiff requests that any limitation on her testimony be restricted to the questions she did

7   not answer. *Id.* at 5.

8           Defendants' request to exclude in its entirety evidence of Plaintiff's emotional distress

9   damages goes too far. Defendants' inability to obtain answers to the propounded questions did not

10  foreclose all avenues to discovery of evidence to refute Plaintiff's claim for damages. Although it

11  is appropriate that Plaintiff, and not Defendants, should bear the consequences of Plaintiff's

12  invocation of her Fifth Amendment rights, a proportional remedy is required. Thus, the Court

13  DENIES Defendants' motion to exclude evidence of emotional distress damages. Instead, the

14  Court finds that an adverse inference jury instruction is the proper remedy in this case.

15          As discussed below, the scope of an adverse inference instruction is not limitless. Upon

16  consideration of Plaintiff's supplemental brief, the Court recognizes that its proposed instruction

17  was overbroad and not in conformance with Ninth Circuit law.

18          While it is well established that a court cannot instruct a jury to draw an adverse inference

19  from a defendant's invocation of his Fifth Amendment right in a criminal trial, such an inference

20  can be drawn in civil proceedings. *Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F. 3d 1258, 1264 (9th

21  Cir. 2000). Before a court can provide an adverse inference instruction, three requirements must

22  be satisfied.

23          First, the party to whom the adverse inference will apply must have appropriately invoked

24  the Fifth Amendment. As noted above, Judge Grewal determined that Plaintiff's invocation of the

25  Fifth Amendment was proper, *see* Order Denying Mot. to Compel at 5, and this Court agrees.

26          Second, the scope of an adverse inference instruction cannot be limitless; rather, it must be

27  tethered to the specific questions asked but not answered. As the Ninth Circuit explained in

28  *Glanzer,* because "the Fifth Amendment's protections against self-incrimination are invoked on a

9

1  question-by-question basis . . . the assertion of the privilege necessarily attaches only to the

2  question being asked and the information sought by that particular question." 232 F. 3d at 1265.

3  To illuminate this requirement, *Glanzer* provides a hypothetical: if a defendant in a civil suit

4  asserts his Fifth Amendment privilege in response to "did you ever pick up the gun?," the only

5  adverse inference instruction the jury can receive is that, from his silence, the jury can infer that he

6  picked up the gun. *Id.* at 1266 n. 2. "However, [the jury] cannot be instructed that it can infer . . .

7  that the defendant fired the gun" because that "would be constructing an inference on another

8  inference." *Id.*

9         Applying that principle here, the Court finds that the adverse inference instruction cannot

10  go as far as Defendants' contention that Plaintiff's silence prevented them from obtaining

11  information "regarding alternative causes for her claimed emotional distress." Supp. Brief at 2.

12  Rather, as described above, Plaintiff asserted the Fifth Amendment only in response to

13  Defendants' questions about whether or not she had conversations with other homicide suspects or

14  their parents in a specific time frame. Accordingly, the Court may provide the jury with the

15  following instruction, assuming Defendants satisfy the third *Glanzer* requirement discussed below:

> You have heard evidence that Mary Lou Gonzales asserted her Fifth Amendment
> right not to answer certain questions at her deposition asking whether she had
> spoken to Shawna Ben, Jimmy Ibarra, any of the other four suspects in the
> homicide, or the parents of any of the other four suspects between February 5,
> 2012 and October 14, 2014 on the grounds that truthful answers would have
> tended to incriminate her. Because this is a civil trial and not a criminal trial, you
> are allowed to draw an adverse inference as to what Ms. Gonzales' answers would
> have been had she elected to answer those questions at her deposition. That is,
> you may, but are not required to, draw an inference that Ms. Gonzales' truthful
> answers in her deposition testimony in fact would have shown that she had
> conversations with suspects in the homicide investigation or their parents between
> February 5, 2012 and October 14, 2014.

24         Finally, *Glanzer* requires that an adverse inference "only be drawn when independent

25  evidence exists of the fact to which the party refuses to answer." 232 F. 3d at 1264. Thus,

26  Defendants will have to establish independent evidence of the fact that Plaintiff spoke to the

27  suspects and/or their parents over the specified time period in order for the Court to provide the

28  adverse inference instruction stated above.

Accordingly, the Court GRANTS Defendants' motion for an adverse inference instruction, as narrowed above and contingent upon Defendants eliciting independent evidence that Plaintiff spoke to the homicide suspects and/or their parents in the specified time period.

**IT IS SO ORDERED.**

Dated:  December 4, 2015

_____
BETH LABSON FREEMAN
United States District Judge