**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARY LOU GONZALES,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF SAN JOSE, et al.,<br><br>  Defendants. | Case No. 13-cv-00695-BLF<br><br>**ORDER GRANTING AS MODIFIED MOTION FOR ATTORNEYS' FEES**<br><br>[Re: ECF 232] |

Plaintiff brought this lawsuit against the City of San Jose and several individuals after police officers who were investigating her son's involvement in a gang-related murder came to her home, mistook her identity, and arrested her. After three years of litigation, the City agreed to pay Plaintiff $10,000, exclusive of attorneys' fees and costs, to resolve all claims and the parties settled on the eve of trial. *See* ECF 225. Plaintiff now seeks a lodestar award of $685,515 plus a multiplier in attorneys' fees.[1] Mot., ECF 232. Defendants oppose the amount as excessive. Opp., ECF 238. For the reasons stated below, the Court GRANTS the motion AS MODIFIED.

**I.    BACKGROUND**

This case arises from an interaction between Metro Team 1, a group of San Jose police officers investigating a murder that they suspected was gang-related, and Plaintiff, the mother of a prime suspect in the case. *See* Summary Judgment Order, ECF 183 at 2. On February 13, 2012, at least six Metro Team 1 officers arrived at Plaintiff's home, with additional support from Metro Team 2 officers. *Id.* at 5 (citing Archer Dep. Pt. 1 112:8-10, 113:4-8, ECF 154-1). Sergeant Archer

---

[1] Plaintiff's motion lists the amount as $652,040.50, but the Court begins with the $685,515 total that results from multiplying the requested hours by the requested rates. Plaintiff also requests costs, *see* Mot. at 22, which have been resolved by the Clerk of the Court pursuant to Civil Local Rule 54-4 and Federal Rule of Civil Procedure 54(d)(1). *See* ECF 240.

1  and Officers DeLa Cruz, the only individual Defendants remaining after summary judgment, and
2  one other officer approached Plaintiff's front door. When she answered, at least one officer
3  incorrectly identified her as a different Hispanic female who was the subject of an outstanding
4  felony arrest warrant. *Id.* at 5-6 (citing Archer Dep. Pt. 1, 149:1-4; DeLa Cruz Dep. Pt. 1, 125:11-
5  126:1, 132:6-24, ECF 155; Ruelas Dep. Pt. 1, 46:21-47:2, ECF 156-3). The officers then pushed
6  Plaintiff into the house, handcuffed her, and sat her on the couch in the living room. *Id.* at 6 (citing
7  Gonzales Dep. Pt. 1, 74:2-14, 78:14-79:21, ECF 155-2). They also conducted a protective sweep
8  that lasted less than a minute. *Id.* at 6 (citing Gonzales Dep. Pt. 1, 79:18-19). Within 15 minutes,
9  the officers realized their mistake, removed the handcuffs, and released Plaintiff. *Id.* at 7-8 (citing
10 Gonzales Dep. Pt. 1, 86:6-10; Ruelas Dep. Pt. 1, 42:11-12).

Following those events, Plaintiff sued the City and four individuals. ECF 1. Kallis & Associates, P.C. ("Kallis Firm") and Bustamante & Gagliasso, P.C. ("Bustamante Firm") worked together to represent Plaintiff. M. Jeffery Kallis and Steven M. Berki served as the lead attorneys for Kallis and Bustamente, respectively.

Defendants moved to dismiss. ECF 14. After Plaintiff responded, ECF 25, Defendants moved to withdraw their motion, ECF 26. Plaintiff subsequently amended her complaint twice, eventually asserting ten claims against nine individuals and the City. *See* ECF 29, 34.

Several months after Defendants answered, they presented Plaintiff with a Rule 68 offer of $10,000. Plaintiff did not accept the offer. The case proceeded through discovery, during which Plaintiff filed a motion to compel, which the Court granted in part, and a motion for sanctions, which the Court denied.[2] *See* ECF 95. The parties stipulated to dismiss six individual defendants and four causes of action with prejudice, including a battery claim, a *Monell* claim, and claims based on equal protection violations, civil conspiracy, and aiding and abetting. ECF 182.

In February 2015, Plaintiff and Defendants cross-moved for summary judgment. The Court granted only Defendants' motion for summary judgment on injunctive relief; the remaining claims—unreasonable search and seizure and excessive force brought under § 1983, supervisory

---

[2] References to the Court encompass actions taken by Judge Grewal.

liability, false arrest, trespass, violation of the Bane Act, and negligence—survived. *See* ECF 183.

In October 2015, Mr. Kallis fell ill and Ms. Acquesta stepped in to assist Mr. Berki. Acquesta Decl. ¶ 10, ECF 229. Five days before the case was set for trial, the parties settled. The City agreed to pay Plaintiff $10,000 for release of all of her claims. The agreement provides, "the Court is to treat Plaintiff as if judgement has been issued in her favor against Defendants as to her 1983 claims." ECF 225.

Plaintiff now seeks $685,515 in fees—$342,045 for the Bustamante Firm and $343,470 for the Kallis Firm—for work completed by two partners, three associates, one paralegal, and one staff member.[3]

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 1988, "'in federal civil rights actions the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Barnard v. Theobald*, 721 F.3d 1069, 1076-77 (9th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983)). "Congress passed § 1988 'to attract competent counsel to prosecute civil rights cases.' Consequently, 'a court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'" *Id.* (quoting *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008)). At the same time, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.2008).

"District courts must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the

---

[3] Again, the Court derives these numbers, which differ from those identified in the motion, by multiplying the requested hours by the requested rates for each firm.

region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL 1579705, at *6 (9th Cir. Apr. 20, 2016) (internal citation omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363-64, nn.3-4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

### III. DISCUSSION

#### A. Availability of Fees

The Court begins with the question of whether any award of fees is appropriate in this case. Under § 1988, fees may be awarded to a prevailing party. *See Barnard*, 721 F.3d at 1076-77. As Plaintiff correctly notes, the settlement agreement provides that "[f]or purposes of Plaintiff's cost and fee motions only, the Court is to treat Plaintiff as if judgment had been issued in her favor against Defendants as to her 1983 claims." Settlement Agreement ¶ 4, ECF 225. The agreement continues, "The City hereby waives any and all argument that Plaintiff is not entitled to costs and/or fees as the prevailing party under claims brought pursuant to 42 U.S.C. section 1983, and agrees not to oppose the motions on the grounds that Plaintiff is not the prevailing party on those claims and that Plaintiff did not prevail on claims which entitle her to fees and costs under section 1988." *Id.*

Defendants attempt to wriggle out of this obligation by arguing that they agreed to this provision only because they expected Plaintiff to exclude excessive, redundant, and unnecessary hours from the request. Opp. at 7. While the Court considers Defendants' challenges to the hours below, Defendants cannot bypass the Settlement Agreement's language on this basis.

Furthermore, the Court finds that Plaintiff achieved an excellent result and rightly qualifies as the prevailing party. Any recovery by Plaintiff in this case was uncertain given the stigma and backlash that the gang-related murder, which was essential for background, could have caused. The recovery was also uncertain because this case involved no economic or physical injury. Therefore, attorneys' fees are appropriate in this case pursuant to § 1988.

Defendants also oppose any award of fees under Federal Rule of Civil Procedure 68, which provides that, prior to trial, a party "may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If the opposing party accepts, "either party may then file the offer and notice of acceptance [with the court] . . . [and t]he clerk must then enter judgment." *Id.* If, on the other hand, the opposing party rejects the offer and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

Here, Defendants argue that Plaintiff failed to achieve any additional benefit after refusing Defendants' Rule 68 offer in November 2013, as the offer was $10,000—the same amount for which Plaintiff ultimately settled after counsel expended hundreds of additional hours. Opp. at 7-8. Plaintiff responds that this argument misconstrues the law because it ignores attorneys' fees.

The Court agrees with Plaintiff. "Because successful plaintiffs are entitled to attorney's fees under section 1988, [the court] must consider the amount of attorney's fees accrued at the time of the offer when deciding whether the plaintiffs improved their positions by going to trial." *Corder v. Gates*, 947 F.2d 374, 385 (9th Cir. 1991). Here, Plaintiff clearly improved her position by rejecting the offer. The ultimate settlement amount of $10,000 was exclusive of fees and costs and therefore exceeds the $10,000 Rule 68 offer, which would have had to cover fees that, according to Defendants, already exceeded $70,000 at the time of the offer. "Thus, because the plaintiffs improved their position by rejecting defendants' offer and going to trial, Rule 68 d[oes] not control." *Id.* Accordingly, the Court finds that an award of attorneys' fees is appropriate.

**B. Amount of Fees**

The Court next considers whether the requested rates and hours are reasonable.

**1. Rates**

Under § 1988, fees "'are to be calculated according to the prevailing market rates in the relevant community' . . . taking into consideration 'the experience, skill, and reputation of the attorney.'" *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 886 (1984) and *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) *amended* 808 F.2d 1373 (9th Cir. 1987)). The fee applicant must "produce satisfactory evidence—

5

in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Dang*, 422 F.3d at 814. The relevant community "is the forum in which the district court sits," here the Northern District of California. *Camacho*, 523 F.3d at 979.

Plaintiff's counsel request the following rates: $625/hour for Mr. Kallis, who has nearly 20 years of legal experience and normally charges $575-675/hour in his contingent fee cases, *see* Kallis Decl. ¶ 7, ECF 228; $575/hour for Mr. Berki, who was the lead managing attorney for the Bustamante Firm in this case and has 10 years of legal experience, *see* Berki Decl. ¶ 3, 5, ECF 230; $450/hour for Ms. Acquesta, an associate with the Bustamante Firm who has 23 years of legal experience, *see* Acquesta Decl. ¶¶ 5, 9, ECF 229; and $425/hour for Ms. Emmaneel, an associate with 12 years of experience, and Mr. Gagliasso, a partner with 22 years of experience, both of the Bustamante Firm, *see* Berki Decl. ¶¶ 13, 15-16.

Plaintiff offers several cases as evidence that these rates fall within the prevailing rates in the Northern District. *See Padgett v. Loventhal*, No. 5:04-CV-03946-EJD, 2015 WL 1520827 at *3 (N.D. Cal. Mar. 31, 2015) (listing "reasonable hourly rate for civil rights attorneys" in the Bay Area as "up to $700 for partners, up to $350 for associates, [and] up to $200 for paralegals and law clerks"); *Californians for Disability Rights v. California Dep't of Transp.*, No. C 06-05125 SBA MEJ, 2010 WL 8746910, (N.D. Cal. Dec. 13, 2010) (finding $640, $660, and $570 to be reasonable hourly rates for attorneys at Disability Rights Advocates with 23, 19, and 10 years of experience, respectively); *Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *7, *9 (N.D. Cal. Dec. 8, 2014) (approving hourly rates in an individual civil rights case of $725 and $695 for partners and $325, $350, and $400 for associates with 2, 3, and 5 years of experience); *A.D. v. State of California Highway Patrol*, No. C 07-5483 SI, 2013 WL 6199577, at *5-6 (N.D. Cal. Nov. 27, 2013) (approving hourly rates in a wrongful death case of $725 for attorneys with 34 to 40 years of experience and $425 for attorney with 9 years of experience); *Davis v. Prison Health Servs.*, No. C 09-2629 SI, 2012 WL 4462520, at *9 (N.D. Cal. Sept. 25, 2012) (approving hourly rates of $675-750 for attorneys with close to 30 years of civil rights and employment litigation experience, $300 for an attorney with 4 years of experience, and $265 for an attorney with 3 years of experience); *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL

6

4063144, at *4 (N.D. Cal. Aug. 15, 2014) (approving hourly rates in an employment case of $700 for a partner with 31 years of experience, $650 for an attorney with 22 years of experience, $550 for a law firm shareholder with 27 years of experience and a limited role in the case, $350 for a firm shareholder with 8 years of experience and a limited role in the case, $300 for an associate with 6 years of experience who was involved in the case "from its inception," and $275 for an associate with 7 years of experience who only worked on the motion for attorneys' fees).

Having reviewed those cases, the Court observes that the rates sought for Mr. Kallis, Mr. Gagliasso, Ms. Acquesta, and Ms. Emmaneel fall within the identified range. On the other hand, the $575/hour rate requested for Mr. Berki, who graduated from Santa Clara University School of Law in 2005 and was admitted to the California bar in 2006, appears to exceed the $350-425 hourly rate generally awarded to attorneys with comparable experience. *See, e.g., Aguilar,* 2014 WL 4063144, at *4 ($350/hour awarded for an attorney with 8 years of experience); *A.D.*, 2013 WL 6199577, at *5-6 ($425/hour approved for an attorney with 9 years of experience).

Of the cases Plaintiff offers, only *Californians for Disability Rights* approves a comparable rate—$570 for an attorney with 10 years of experience—but Defendants argue that the legal work required for *Californians for Disability Rights*, a complex class-action lawsuit, is not comparable to the experience and skill necessary for this case, which they characterize as "a routine civil rights police tort case for a single plaintiff." Opp. at 8-9. Defendants also direct the Court to a declaration Mr. Berki submitted when seeking attorneys' fees in a civil rights case in 2013, which requested an hourly rate of $375. Exh. C to Johnson Decl., ECF 238-2.

In support of his requested rate, Mr. Berki notes that he has been the lead managing attorney for the Bustamante Firm in this case since its inception. Berki Decl. ¶ 3. In addition, Mr. Berki explains that he has represented several clients through trial in district court, as well as clients appealing before state and federal courts of appeals, and that the standard hourly rate for comparable attorneys in the Bay Area ranges from $450 to 600 per hour. *Id.* ¶¶ 9, 14.

Though the case law suggests that the request is high for an attorney of his experience, the Court finds that Mr. Berki's requested rate is reasonable in light of his central role in this litigation, which only grew after Mr. Kallis fell ill. In addition, as noted above, the Court considers

7

the result in this case to be significant, which reflects positively on Mr. Berki's skill. Thus, the Court finds the fees requested for each attorney to be reasonable.

Finally, Plaintiff appears to seek fees for work performed by paralegal Maria Garcia of the Bustamante Firm and staff of the Kallis Firm. Though Plaintiff does not explicitly identify the hours or rates for these individuals in the motion, Mr. Berki represents that he reviewed the hours submitted by Ms. Garcia, Berki Decl. ¶ 13, and the Bustamante Firm includes Ms. Garcia in the fee summary submitted with their billing sheets, which identifies her hourly rate as $150. Exh. B to Berki Decl. at 35, ECF 230-1. To support the request for Mr. Kallis' staff member, Mr. Kallis represents that he customarily bills $75/hour for such work to his clients, Kallis Decl. ¶ 11, and submits a table detailing the 4.6 hours of work completed by his staff, *see* Exh. B to Kallis Decl., ECF 228-1.

Defendants oppose this request, arguing that Plaintiff has not presented sufficient evidence to recover for paralegal work. Opp. at 10. The Court agrees. Plaintiff has failed to offer any evidence to support the request for an hourly rate of $150 for Ms. Garcia or $75 for Mr. Kallis' staff. Plaintiff offers no information regarding Ms. Garcia's experience, education, or training. With regard to Mr. Kallis' staff member, the individual is not even identified by name. Absent such evidence, the Court cannot determine whether the rate requested lines up with the prevailing rates for individuals of comparable skill, education, and reputation. Accordingly, the Court finds the rates to be unsupported and therefore unreasonable.

### 2. Hours

The Court next considers the hours expended. The Court cannot "uncritically" accept the plaintiff's representations of hours expended; rather, the Court must assess their reasonableness. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984). In making this determination, the Court can reduce hours when documentation is inadequate, or when the requested hours are redundant, excessive, or unnecessary. *Hensley*, 461 U.S. at 433-34.

Plaintiff seeks fees for 1,243.5 hours of work completed by Mr. Kallis, Mr. Berki, Mr. Gagliasso, Ms. Emmaneel, Ms. Acquesta, Ms. Garcia, and Mr. Kallis' staff member. To support this request, each firm submitted detailed time sheets. *See* Exh. B to Berki Decl.; Exhs. A-B to

8

1  Kallis Decl. In addition, at the Court's request, Mr. Berki submitted the following table, detailing
2  the hours each individual devoted to ten discrete tasks:

| Task | Kallis | Berki | Acquesta | Gagliasso | Emmaneel | Staff |
|---|---|---|---|---|---|---|
| Pre-Suit Investigation | 11.8 | 10.2 | 0 | 0 | 0 | 0 |
| Drafting Initial Complaint | 18.9 | 2.5 | 0 | 0 | 0 | 0 |
| Motion to Dismiss | 10.4 | 12.3 | 0 | 0 | 0 | 0 |
| Drafting Amended Complaints | 2.2 | 3.2 | 0 | 0 | 0 | 0 |
| Discovery, including motions | 381.7 | 188.6 | 18.7 | 0.9 | 5.6 | 0 |
| Case Management | 3.4 | 17.6 | 0 | 0 | 0 | 0 |
| Motion for Summary Judgment | 0 | 69.1 | 1.5 | 0 | 0 | 0 |
| Settlement | 21.3 | 31.9 | 8.6 | 7.4 | 0 | 0 |
| Trial Preparation | 40.1 | 80.2 | 91 | 0.4 | 0 | 72.6 |
| Miscellaneous (describe) | 59.2 | 37.5 | 20.4 | 0 | 0 | 14.3 |
| Total Hours | 549 | 453.1 | 140.2 | 8.7 | 5.6 | 86.9 |

*See* ECF 242. Mr. Berki explained that the miscellaneous time was largely devoted to the retainer agreement, the fee motion, background research, and communication between parties. *Id.* at 1-2.

As noted above, though the 86.9 hours requested for the work by Ms. Garcia and Mr. Kallis' staff member would appear reasonable, there is no information regarding either individual's experience or training. Absent such evidence, these hours are excluded.

Turning to the attorneys' hours, Defendants specifically challenge two categories: the time Ms. Acquesta spent familiarizing herself with the case and the time expended on unsuccessful claims. Opp. at 5, 7. While the Court agrees that time an attorney spends getting up to speed is not appropriate for a fee request, Plaintiff represents that Ms. Acquesta has already excluded this time from her requested hours. *See* Summary of Hours at 2. Having reviewed Ms. Acquesta's declaration and summary of hours expended, the Court is satisfied that Plaintiff has deleted all

duplicative hours.

As for Defendants' argument about unsuccessful claims, while Defendants do not identify the claims they consider to be unsuccessful, Defendants are correct that a number of Plaintiff's claims did not survive to summary judgment. As noted in the Background Section, the parties stipulated to dismiss the battery and *Monell* claims, as well as claims premised on equal protection, conspiracy, and aiding and abetting ("Unsuccessful Claims"). In addition, as part of the settlement, the parties stipulated that the § 1983 claim was successful ("Successful Claim").

When counsel seeks fees for both successful and unsuccessful claims, the Ninth Circuit instructs district courts to follow a two-part analysis. "First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) (quoting *Thorne v. El Segundo,* 802 F. 2d 1131, 1141 (9th Cir. 1986). "Echoing the Supreme Court's description of related-claim cases, [the Ninth Circuit has] said that related claims involve a common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original) (citing *Hensley*, 461 U.S. at 435).

Comparing the facts and legal theories underlying the Unsuccessful and Successful Claims, the Court finds that the battery claim was not related to the § 1983 claim and the *Monell* claim against the City was unrelated to other theories of liability under §1983, but that the remaining Unsuccessful Claims were related to the successful § 1983 claims. The *Monell* claim centered on the City's policies and procedures, which are not at issue in the other § 1983 claims, and the battery claim was levied against an officer who was dismissed with prejudice from all claims. On the other hand, the claims premised on theories of equal protection were related to the § 1983 claim by facts about the officers' misidentification of Plaintiff as another Hispanic female and the dismissed conspiracy and aiding and abetting claims were related to the § 1983 claim by facts regarding the officers' knowledge of Plaintiff and reasons for coming to her home.

Where the Court finds that the claims are unrelated, "the final fee award may not include time expended on the unsuccessful claims." *Schwarz*, 73 F.3d at 901 (quoting *Thorne,* 802 F. 2d at 1141). If, on the other hand, "the unsuccessful and successful claims are related . . . the court must

10

apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion." *Id.* (quoting *Thorne,* 802 F. 2d at 1141).

Because the Court finds that the *Monell* and battery claims are unrelated to the successful claims, the time expended on those claims must be excluded. At the Court's request, Plaintiff provided estimates of those hours, which Defendants do not oppose: 15 hours to the *Monell* claim and 10 hours to the battery claim. *See* Summary of Hours at 2. Therefore, the Court reduces the requested hours by a total of 25 hours. The Court apportions this reduction to Mr. Berki because the hours reflect that he was largely responsible for the amended complaints, in which the claims first appeared, and the motions for summary judgment, which were fully briefed before the parties agreed to dismiss the claims and devoted substantial argument to the *Monell* theory of liability. In addition, the parties engaged in discovery over that time period, which the Court assumes led to the ultimate dismissal of the claims. Therefore, the Court reduces Mr. Berki's hours on the amended complaints by 1.5 hours, on discovery by 15 hours, and on the motions for summary judgment by 8.5 hours. Having found above that Plaintiff achieved an excellent result, the Court does not reduce Plaintiff's request by the hours expended on the other dismissed claims.

In addition to the two specific challenges, Defendants also broadly argue that the overall request is unreasonable in light of the experience of Plaintiff's counsel, Plaintiff's limited success, and the Rule 68 offer. The Court has considered, and rejected, the latter two arguments above. As for the overall reasonableness of the hours, while the Court notes that Defendants give no reason to doubt Plaintiff's submission, the Court agrees that Plaintiff bears the burden of supporting the request, *see Hensley* at 461 U.S. at 437. Therefore, the Court now turns to Plaintiff's explanations.

Plaintiff admits that certain parts of the case resulted in a "higher than ordinary number of hours," but offers several pages of justification for them. Mot. at 5-12. Of particular concern to the Court, Plaintiff explains that the nearly 600 hours devoted to discovery was necessitated by the number of officers and other City personnel involved in the alleged misconduct—leading to 22

lengthy depositions—as well as the City's invalid assertion of privileges in response to Plaintiff's request for documents, which required Plaintiff not only to file a successful motion to compel but also to sift through 7 incompatible privilege logs and compare redacted and unredacted versions of the same documents with different Bates stamps numbers. In light of this background, the Court finds the requested 595.5 hours, which Defendants do not specifically oppose, to be reasonable.

Similarly, the Court finds the remaining hours to be reasonable. In many cases, the hours expended through the pleading stage are substantial, but here the requested 71.5 hours are quite spare. In addition, the 211.7 hours expended by attorneys for trial preparation are justified by the fact that this case was five days from trial when it settled, meaning that the parties had already proceeded through motions *in limine,* jury instructions, and the Court's other pretrial requirements. As Plaintiff explains, the 70.6 hours spent on motions for summary judgment, reduced above to 62.1 hours, is reasonable for cross-motions on numerous claims. Thus, with the specific exceptions identified above, the Court awards the hours as requested. The table below reflects the awarded hours:

| Task | Kallis | Berki | Acquesta | Gagliasso | Emmaneel | Staff |
|---|---|---|---|---|---|---|
| Pre-Suit Investigation | 11.8 | 10.2 | 0 | 0 | 0 | 0 |
| Drafting Initial Complaint | 18.9 | 2.5 | 0 | 0 | 0 | 0 |
| Motion to Dismiss | 10.4 | 12.3 | 0 | 0 | 0 | 0 |
| Drafting Amended Complaints | 2.2 | 1.7 | 0 | 0 | 0 | 0 |
| Discovery, including motions | 381.7 | 173.6 | 18.7 | 0.9 | 5.6 | 0 |
| Case Management | 3.4 | 17.6 | 0 | 0 | 0 | 0 |
| Motion for Summary Judgment | 0 | 60.6 | 1.5 | 0 | 0 | 0 |
| Settlement | 21.3 | 31.9 | 8.6 | 7.4 | 0 | 0 |
| Trial Preparation | 40.1 | 80.2 | 91 | 0.4 | 0 | 0 |
| Miscellaneous (describe) | 59.2 | 37.5 | 20.4 | 0 | 0 | 0 |
| Total Hours | 549 | 428.1 | 140.2 | 8.7 | 5.6 | 0 |

### 3. Lodestar Calculation

Based on the foregoing, the total lodestar calculation is summarized in the following table:

|  | Hourly Rate | Hours Requested | Hours Excluded | Hours Awarded | Total Tentatively Awarded |
|---|---|---|---|---|---|
| **Mr. Kallis** | $625 | 549 | 0 | 549 | $343,125.00 |
| **Mr. Berki** | $575 | 453.1 | 25 | 428.1 | $246,157.50 |
| **Ms. Acquesta** | $450 | 140.2 | 0 | 140.2 | $63,090.00 |
| **Ms. Emmaneel** | $425 | 8.7 | 0 | 8.7 | $2,380.00 |
| **Ms. Gagliasso** | $425 | 5.6 | 0 | 5.6 | $3,697.50 |
| **Ms. Garcia** | -- | 82.3 | 82.3 | 0 | 0 |
| **Staff** | -- | 4.6 | 4.6 | 0 | 0 |
|  |  |  |  | **Total** | $658,450.00 |

### C. Lodestar Multiplier

Plaintiff seeks a multiplier and explains why one is appropriate, but does not specify the requested amount. Mot. at 18-21. The lodestar amount, while presumptively reasonable, may be adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363, n.8 (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). "The twelve *Kerr* factors bearing on the reasonableness are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*

Plaintiff explains that this case was time and labor intensive because it initially appeared to

involve an entire metro team, requiring counsel to sift through competing stories and voluminous documentation. Mot. at 19. Plaintiff argues that the City's aggressive defense, as reflected in the withdrawn and unmeritorious motion to dismiss and document production, only increased the time required. *Id*. Counsel also notes that litigating this case required them to bypass other opportunities and that they worked on a contingency basis, which left them unpaid and required them to advance the necessary costs for three years. *Id.* at 20. In addition, Plaintiff's attorneys contend that they were uniquely qualified to litigate this case given their experience. *Id.* at 20-21. Finally, counsel explains that the undesirability of and risk inherent in this case necessitates a multiplier in this case. *Id.* at 21-22.

Defendants respond that, with the exception of one claim, this case should have been a simple lawsuit involving well-established legal principles for civil rights lawyers of Plaintiff's counsel's experience. Opp. at 3-4. In addition, Defendants again oppose a multiplier for the reasons addressed and rejected above: that the case was unsuccessful and that counsel failed to achieve a better result than the Rule 68 offer. *Id.* at 10-11.

The Court agrees with Plaintiff that the case was factually complex. Plaintiff asserted constitutional violations in the context of an extensive police operation to investigate an alleged gang murder in which Plaintiff's son was the chief suspect. The number of officers on the scene when the alleged misconduct occurred was extraordinary, necessitating complicated discovery that was only made more difficult by the obstacles City threw in Plaintiff's way. The Court also agrees with Plaintiff that the contingency-fee arrangement justifies a multiplier, as does the fact that this was not an attractive case for attorneys to take. At the same time, the legal issues involved should have been relatively standard for lawyers of Plaintiff's counsel's experience and expertise.

Having granted Plaintiff's counsel's requested fees and hours nearly in full, the Court finds that a multiplier of 1.1 is appropriate on balance, as reflected in the totals below:

| Attorneys | Total Tentatively Awarded | Multiplier | Total Awarded |
|---|---|---|---|
| **Mr. Kallis** | $343,125.00 | 1.1 | $377,437.50 |

14

| Mr. Berki | $246,157.50 | 1.1 | $270,773.25 |
| --- | --- | --- | --- |
| Ms. Acquesta | $63,090.00 | 1.1 | $69,399.00 |
| Ms. Emmaneel | $2,380.00 | 1.1 | $2,618.00 |
| Ms. Gagliasso | $3,697.50 | 1.1 | $4,067.25 |
| Ms. Garcia | 0 | 1.1 | 0 |
| Staff | 0 | 1.1 | 0 |
| | | Total | $724,295.00 |

## IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Attorneys' Fees is GRANTED AS MODIFIED. Plaintiffs shall recover attorneys' fees in the amount of $724,295.

Dated: May 26, 2016

_____
BETH LABSON FREEMAN
United States District Judge

15